UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.10-60069-MC-MOORE/SIMONTON

ECHOSTAR SATELLITE, et al.,

    Plaintiffs,

v.

VIEWTECH, INC., et al.,

    Defendants.
_____/

ORDER GRANTING PLAINTIFFS'
MOTION TO COMPEL PRODUCTION

Presently pending before the Court is the Plaintiffs' Motion to Compel Roger Truss' Production (DE # 1).  The Defendant has filed an Opposition and Amended Opposition to the Motion (DE ## 13, 15) and the Plaintiffs have filed a Reply (DE # 18). The Motion has been referred to the undersigned Magistrate Judge (DE # 9).  Based upon a thorough review of the record, for the following reasons, the Plaintiffs' Motion to Compel is GRANTED, subject to the privacy protections contained in this Order.

I.    BACKGROUND

Plaintiffs DISH Network, L.L.C. (f/k/a EchoStar Satellite L.L.C.), EchoStar Technologies, L.L.C. and NAGRASTAR L.L.C., (collectively "DISH") instituted this action seeking to compel Roger Truss, d/b/a Truss & Associates ("Truss") to comply with a subpoena to produce documents relevant to an action pending in the Southern District of California to which Truss is not a party.  The underlying action in California alleges that the Defendants named therein, Viewtech, Inc., Jung Kwak and DOES 1-10 ("California Defendants"), violated the Digital Millennium Copyright Act, 17 U.S.C. § 1201, et seq., ("DMCA"), the Communications Act, 47 U.S.C. § 605 et seq., and the Electronic

Communications Privacy Act, 18 U.S.C. § 2511(1)(a) by distributing a "Viewsat" receiver which purportedly allows viewers unauthorized access to DISH Network's programming.[1]  The Plaintiffs herein allege that Truss is one of the California Defendants' authorized dealers who sold the Viewsat receiver to various consumers. The Subpoena at issue in this matter requests, among other things, that Truss produce the following:[2]

> 15.     Documents sufficient to identify each person that purchased or otherwise acquired a Viewsat receiver from you during the period of January 1, 2004 to present date, including, but not limited to, documents that identify each person's name, address, phone number and email address, as well as the purchase date, purchase price, purchase quantity, and model number for each Viewsat receiver.

The Plaintiffs in this action contend that the information requested in the subpoena, which identifies Truss' customers who purchased the Viewsat, is relevant to the Plaintiffs' claims alleged in the California action.  In support of their position, the Plaintiffs assert that the District Court in California where the underlying litigation is pending has already determined that Viewtech's dealers' customer information is relevant to that action and has determined that any privacy interest raised regarding the information is outweighed by the Plaintiffs' need for discovery in the case.  The Plaintiffs therefore request that Truss be ordered to produce the requested documents within thirty (30) days from the date of this Order (DE # 4-1).

---

[1] The underlying California action is *Echostar Satellite L.L.C., Echostar Technologies Corporation, and Nagrastar L.L.C., v. Viewtech, Inc., Jung Kwak, and Does 1-10*, Case No. 07-CV-01273 W (WVG) (S.D. Cal.).

[2] The Subpoena at issue also requested fourteen other categories of documents which, by all accounts, were produced by Truss to the Plaintiffs and thus are not at issue in the instant Motion (DE # 4 at 49-56).

The Plaintiffs have also submitted the Declaration and Supplemental Declaration of Stephen M. Ferguson, an attorney in the California Viewtech litigation, in support of their Motion (DE ## 4, 18-1).  In his Affidavit, among other things, Mr. Ferguson asserts that after the subpoena was served on Truss, he was advised by counsel for Truss that it would likely take approximately 200 hours for Truss to review thousands of sales records to find documents responsive to the Subpoena (DE # 4 at 3).  Mr. Ferguson states that he proposed that DISH Network retain and pay the cost for an agreed third party to review the potentially responsive materials (DE # 4).  According to Mr. Ferguson, Truss declined the cost shifting proposal from DISH. *Id*.

In Opposition to the instant Motion to Compel, Truss asserts that the instant matter is distinguishable from the California litigation (DE # 15).  Specifically, Truss asserts that it has no contact or relationship with the Viewtech Defendants and is not a named defendant in the California litigation.[3]  Further, Truss argues that under Florida law, broad protection is provided against intrusive discovery requests.  Specifically, Truss points to Article I, section 23 of the Florida Constitution, Florida Rule of Civil Procedure 1.280(b)(1), Florida Statute § 90.506 and Florida case law for support of its position.  Truss asserts that Echostar has failed to meet its burden of demonstrating that the confidential commercial information is sufficiently relevant and necessary to the

---

[3] Truss originally submitted an Opposition to the Motion to Compel (DE # 13), and then filed an Amended Memorandum in Opposition to the Motion to Compel (DE # 15) which stated in its caption that the amended memorandum was "simply correcting scrivener's errors".  However, the Court has carefully reviewed both responses and notes that substantive and significant changes were made in the Amended Opposition and accompanying affidavit, and not just corrections to scriveners' errors.  For example, in the original Opposition, Truss stated that it did not sell any accompanying software of provide any support of any kind to the purchasers of its receivers (DE # 13 ¶ 7).  That statement was omitted from the Amended Opposition.  Thus, Truss' reference to such changes as "scrivener's errors" is inaccurate.

case to outweigh the harm that disclosure would cause to Truss.

Further, Truss has submitted the Affidavit of Roger Truss, the owner of Truss and Associates, which sets forth the nature of Truss and Associates' business and states that Truss sells satellite equipment designed to "pick up" signals of channels that are free to watch (DE # 14). According to the Affidavit, Truss has sold ViewSat receivers since August of 2005. Mr. Truss also states that Truss responded to fourteen of the categories of documents contained in the Plaintiffs' Subpoena for Production of Documents but objected to the request at issue because it requested the production of trade secret information and violated Truss' and its customers' right to privacy as provided by Florida law. Mr. Truss also contends that it would take between 100-140 hours to compile the information requested by the Plaintiffs.

In Reply, DISH disputes Truss' claims that it has or had no connection with the California Defendants, Jung Kwak and Viewtech. According to DISH, Truss has advertised its satellite receivers on numerous satellite piracy websites which promote the use of Viewsat receivers to steal DISH network programming (DE # 18 at 4-5). In addition, DISH alleges that Truss has used its own website to advertise certain receivers that have "Internet Key Sharing" functionality, a new form of satellite piracy (DE # 18 at 5). In addition, DISH provided a February 9, 2010, Order from the Central District of California wherein a Magistrate Judge granted a plaintiff's motion to compel the same documents requested herein from another Viewtech authorized dealer. (DE #18 at 10).

Based upon the arguments made in the Parties' submissions and based upon a thorough review of the record, for the following reasons, the undersigned grants the Plaintiffs' Motion to Compel, in part.

II.  LAW & ANALYSIS

A. Framework for Analysis

Rule 26 of the Federal Rules of Civil Procedure provides for a broad scope of discovery and provides, "Parties may obtain discovery of any matter, not privileged, which is relevant to the subject matter involved in the pending action ...." Fed. R. Civ. P. 26(b). It is well established that the party opposing a motion to compel discovery bears the burden of establishing that the requested discovery is improper, unreasonable or burdensome. *See, e.g., Panola Land Buyers Ass'n. v. Shuman*, 762 F.2d 1550, 1559 (11th Cir.1985).

However, although Rule 26(b) applies to discovery of non-parties as well as parties in a suit, requests for non-party production of discovery materials require courts to engage in a case-specific balancing test and weigh factors such as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by the requests and the particularity with which the documents are described against the burden imposed on a person ordered to produce the desired information. *United Technologies Corp. v. Mazer*, 2007 WL 788877 *1 (S.D. Fla. March 14, 2007) (citing *Farnsworth v. Procter & Gamble Co.*, 758 F. 2d 1545 (11th Cir.1985)). Courts must also consider the status of a witness as a non-party when determining the degree of burden; the status of the person as a non-party is a factor often weighing against disclosure. *Id.*

B. Prior Rulings on Same Issue

At the outset, before applying the balancing test to the case at bar, it is worth noting that although the rulings by other district courts on this issue are not binding on this court, the undersigned finds persuasive the rulings cited by the Plaintiffs wherein at

5

least two District Courts in California have permitted the Plaintiff Echostar Satellite to obtain the exact same information through discovery that it requests herein related to identifying persons who purchased receivers that Echostar alleges were used to pirate the DISH signal.[4]

Most significantly, a July 11, 2009 opinion issued by a Magistrate Judge in the California action denied Defendants Viewtech and Kwak's Motion for Protective Order regarding the disclosure of customer information from the Defendants' authorized dealers to the Plaintiffs. *See Echostar Satellite LLC., et al., v. Viewtech, Inc, et al.*, Case No. 07cv1273 W (AJB) (S.D. Cal. 2007 DE # 93). In so doing, the Magistrate Judge opined that the Plaintiffs had a legitimate need to obtain the requested information in order to determine how the receivers were marketed and whether the Defendants assisted in the interception of satellite signals. The Magistrate Judge further concluded that the Plaintiffs' need for the relevant information outweighed the Defendants' privacy concerns, but limited the Plaintiffs' use of the customer information obtained. The Defendants' objections to the Magistrate Judge's Order were overruled in a District Court Judge's Order wherein he examined the statutes that the Plaintiff's alleged the Defendants' violated and concluded, "...there is little doubt that the information EchoStar seeks is relevant to determining how Viewtech-or others with whom Viewtech may be

---

[4] The Court is aware, however, that the two orders cited by the Plaintiffs disposed of motions for protective orders filed by the defendants in an action and not non-parties, who in this case seek to quash the Plaintiffs' subpoena. However, the information sought by the Plaintiffs is the same herein as in those two cases, and thus has the same relevance to the plaintiffs' claims as the subpoena at issue in the matter at bar. Similarly, the arguments raised by the defendants in those actions, e.g., privacy and trade secrets, are the same as those raised in this action. As such, the Court finds that the analysis applied in those cases is equally applicable to the non-parties' arguments raised in this matter.

acting in concert-markets its products." [5]

Similarly, on February 9, 2010, the District Court for the Central District of California, Southern Division entered an Order granting these Plaintiffs the same relief that is requested in this action against another authorized dealer of Viewsat. *See EchoStar Satellite LLC, et al., v. Viewtech, Inc., et al*, Case No. 10-CIV-00043-AG-MLG (C.D. Cal. February 9, 2010, DE # 16).

Finally, in a separate action, *Echostar Satellite, L.L.C., et al., v. Panarex, Inc.*, Case No. CV 07-5897-SGL (PLAx) (C.D. Cal. Oct. 8, 2008), a district court denied a defendant's motion for protective order related to plaintiff's request for information from authorized dealers regarding customers who purchased receivers which plaintiffs alleged were used to intercept Dish networks satellite signals.  Thus, courts presented with a similar factual scenario to the one at bar have permitted plaintiffs to obtain such discovery. *But see Echostar Satellite LLC., v. Freetech, Inc.*, 2008 WL 4460236 (N.D. Cal. Sept. 29, 2008) (denying plaintiff Echostar's motion to compel customer information from a seller of receivers, finding information had minimal probative value for claims brought under the DMCA and the Communications Act). With these rulings in mind, the undersigned now turns to the subpoena at hand.

---

[5] The undersigned additionally notes that, akin to concerns addressed by the "law of the case" doctrine, if this Court were to deny the instant Plaintiffs' Motion to Compel herein, the result would be inequitable because certain distributors who are located in California would have to produce documents responsive to Plaintiffs' subpoena in the underlying case consistent with the California court's ruling, but distributors located in Florida, like Truss, would not have produce documents in the same case, simply by virtue of their location and the geographic limits of a Rule 45 subpoena.  See e.g., *Estate of Manuel A. Gonzales v. Hickman*, 2007 3231956 * 4 (C.D. Cal. April 18, 2007) (explaining purpose of law-of-the-case doctrine and need for consistent rulings in same case).

### C. Documents Sought by the Plaintiffs are Relevant

For the following reasons, the undersigned concludes that the balancing test utilized by several courts in determining whether a non-party should be compelled to produce discovery materials weighs in favor of the Plaintiffs in this action. First, the documents requested by the Plaintiffs are relevant to the California action. In that action, the Plaintiffs have alleged, among other things, that the Defendants violated the Digital Millennium Copyright Act, 17 U.S.C. § 1201, et seq., which provides, in relevant part,

> § 1201. Circumvention of copyright protection systems
>
> (a)...
>
> (2) No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that--
>
> (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;
>
> (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or
>
> (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

and,

> (b) Additional violations.--(1) No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that--
>
> (A) is primarily designed or produced for the purpose of

>circumventing protection afforded by a technological
>measure that effectively protects a right of a copyright owner
>under this title in a work or a portion thereof;
>
>(B) has only limited commercially significant purpose or use
>other than to circumvent protection afforded by a
>technological measure that effectively protects a right of a
>copyright owner under this title in a work or a portion
>thereof; or
>
>(C) is marketed by that person or another acting in concert
>with that person with that person's knowledge for use in
>circumventing protection afforded by a technological
>measure that effectively protects a right of a copyright owner
>under this title in a work or a portion thereof.

Thus, in this case, the Plaintiffs' request for information regarding customers who purchased the Viewsat receivers may well assist in establishing that the Viewsat was marketed to a particular customer as a way to circumvent technological measures designed to control access to the Dish network, which relates directly to Plaintiffs' allegations pursuant to the DMCA.  In addition, the requested information may shed light on whether the Viewsat has a commercially significant purpose other than that alleged by Plaintiffs, which similarly relates directly to the claims raised in the Plaintiffs' Complaint (DE # 4 at 17).  Thus the documents requested are relevant to the California action.

      Second, it may be difficult, if not impossible, for the Plaintiffs to obtain information regarding the marketing and sales methods directed to the end users of the Viewsat receivers from sources other than distributers, like Truss.  Indeed it is highly unlikely that the Defendants named in the California action would have documents related to the marketing of the Viewsat receiver in cases where a distributer made the sale directly to the consumer.  Therefore, the Plaintiffs have a substantial need to obtain the information by subpoenaing records from the distributor, *i.e.,* Truss.

In addition, the Plaintiffs' request is specific and relevant in scope and time frame to the issues raised in the California litigation. Further, as discussed below, the Plaintiffs have offered to pay for the costs associated with the production. Thus, this factor also weighs in favor of the Plaintiffs in this action. Moreover, although Truss is a non-party in the California action, the Plaintiffs allege that Truss has been more than a wholly independent third-party, but rather have alleged that Truss has facilitated and/or encouraged the sale of the Viewsat for improper purposes.

Accordingly, the undersigned finds that all of the factors weigh in favor of permitting DISH to obtain the documents that it seeks from Truss.

### D. Privacy of Truss and its Customers

Truss' argument regarding the privacy protections available under the Florida Constitution and Florida Statutes does not alter this Court's conclusion. First, this action is a federal action predicated upon Rule 45 of the Federal Rules of Civil Procedure and not upon any Florida statute or Florida discovery rule. Thus, for purposes of determining the scope of Rule 45 and whether the Plaintiffs are entitled to the discovery pursuant to that Rule, federal law rather than state law applies to this matter.

Moreover, as conceded by Truss, even under the applicable Florida rules, Florida Rule of Civil Procedure 1.280 (b)(1) provides that any nonprivileged matter that is relevant to the subject matter of the action is discoverable. Thus, under the broad scope of discovery permitted under Florida State Civil Procedure Rules, the subpoenaed information would likely be discoverable as it is relevant to the subject matter of the action.

In addition, Truss' reliance on Article I, section 23 of the Florida Constitution for a source of privacy is misplaced in this case. Indeed, the cases cited by Truss wherein the

privacy interests rise to the level of Federal or State Constitutional protection primarily, if not entirely, relate to fundamental privacy interests such as marriage, contraception and education, and specifically address governmental intrusion related to those privacy rights. *See e.g.* Article I, Sec. 3, Florida Constitution, stating *inter alia*, "Every natural person has the right to be let alone and free from *governmental* intrusion into his private life." Further, assuming *arguendo* that the Florida Constitution provides privacy protections for customer information in a case akin to the instant matter, any invasion of privacy may be limited by a protective order which only permits the information to be used in connection with the instant litigation. Thus, Defendants' argument is without merit.

### E. Trade Secrets Disclosure

Further, Truss' argument that the customer information requested by the Plaintiffs constitutes trade secrets and therefore does not have to be produced pursuant to Federal Rule of Civil Procedure 45 (c) (3) (B) (I) and Florida Statute § 90.506 also fails for several reasons. At the outset, the undersigned concurs that under Florida law, customer lists and related information *may* constitute protectable trade secrets. *See* Fla. Stat. § 688.002(4); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Silcox*, No. 01-8800-CIV, 2001 WL 1200656, at *4-5 (S.D. Fla. Oct. 4, 2001) (Florida law protects customer lists and information from misappropriation and conversion through injunctive relief); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dunn*, 191 F. Supp. 2d 1346, 1351-52 (M.D. Fla. 2002) ("Plaintiff's customer lists and the information contained therein are trade secrets, since the Court finds that Plaintiff has shown that it has taken reasonable efforts to maintain their secrecy and that they give Plaintiff an advantage over those who do not know of their contents or are unable to use them"); *East v. Aqua Gaming, Inc.*, 805 So.2d

932, 934 (Fla. Dist. Ct. App. 2001) (customer list was a trade secret where evidence showed it was the product of great expense and effort, that it included information that was confidential and not available from public sources, and that it was distilled from larger lists of potential customers into a list of viable customers for a unique business). However, under the facts of this case, the undersigned concludes that the cited rules and statutes do not prevent this Court from directing Truss to comply with the Plaintiffs' subpoena even if such disclosure includes trade secrets.

Specifically, Federal Rule of Civil Procedure 45 (c) (3) (B) (I), provides that a court *may* quash or modify a subpoena if it requires disclosing a trade secret. However, this subsection of Rule 45 does not mandate that a Court quash a subpoena under such circumstances but rather, provides in subsection (C) of that Rule that a Court may instead specify conditions of the production as an alternative if: 1) the serving party shows a substantial need for the material and, 2) the subpoenaed person is reasonably compensated. Fed. R. Civ. P. 45 (c) (3) (C); *see also*, *Fadalla v. Life Auto. Prods., Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. 2007). In this case, because the Court has determined that the Plaintiffs have a substantial need for the requested information, and has, as discussed below, ordered that Truss shall be compensated for the production, the Court may direct that the production be made pursuant to certain conditions to protect the non-parties' interests. As set forth in the Conclusion, the Court has in fact limited the use of the production of the requested documents in this case to protect the misuse of any trade secrets that may be obtained through viewing the requested documents. Therefore, pursuant to Rule 45, production may be ordered in this matter.

Similarly, Fla.Stat. § 90.506, Privilege with respect to trade secrets, provides,

A person has a privilege to refuse to disclose, and to prevent other

**12**

>persons from disclosing, a trade secret owned by that person if the allowance of the privilege will not conceal fraud or otherwise work injustice. When the court directs disclosure, it shall take the protective measures that the interests of the holder of the privilege, the interests of the parties, and the furtherance of justice require. The privilege may be claimed by the person or the person's agent or employee.

Thus, the privilege, by its plain language, does not prevent a court from ordering the disclosure of trade secrets but rather directs the court to take measures to protect the interests of the person asserting the privilege.[6]  *Auto Owners Ins. Co. V. Totaltape, Inc.*, 135 F.R.D. 199, 203  (M.D. Fla. 1990) (stating trade secret privilege is not absolute under Florida law and provides that a court may order production if the balances tips in favor of promoting the interests of facilitating the trial and doing justice as opposed to the interests of the claimant in maintaining secrecy.)  As discussed above, the undersigned has taken such protective measures in this action and thus this statute does not bar this court from compelling compliance with the Plaintiffs' subpoena.  Further, the purpose underlying the Florida trade secrets privilege is "to prohibit a party to a suit from obtaining valuable information that could be used to its own advantage, relying upon the duty of a witness to answer questions truthfully." *Id. citing Freedom Newspapers, Inc. v. Egly*, 507 So. 2d 1180, 1184 (Fla. 2d DCA 1987).

As noted by the Magistrate Judge in the California action, "the information sought

---

[6] It is worth noting that this action was not brought pursuant to the diversity jurisdiction of this court, but rather was brought to enforce a subpoena for discovery related to a case in another federal court which raises federal causes of action.  As such, it is questionable, pursuant to Rule 501, which states, in civil actions, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a...person,...shall be determined in accordance with State law, whether the Florida Trade Secret Privilege even applies to this action. *Cf. Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199 (M.D. Fla. 1990) (finding Florida trade secret privilege law applied to declaratory judgment action in federal court which was based in state law.)

by the subpoena[s] does not extend to the viewing habits of the user; rather, it focuses on the identities of the purchasers in order to determine how the receivers were promoted, and how they are used." (Case No. 07-05897, DE # 67 at 5).  Further, as stated by that Court, "Any privacy concerns can be adequately addressed by the existing protective order and the additional restriction on the information..." (Case No. 07-05897, DE # 67 at 6).  Thus, the instant case is distinguishable from the cases cited by Truss because Plaintiffs' request for customer information in this case differs greatly from those cases where a competitor seeks customer information that ultimately may be used to solicit customers and/or initiate litigation against those customers. The undersigned concludes that the privacy concerns raised by Truss related to the identification of its customers do not outweigh the need for the Plaintiffs in this action to discover the requested information.  In addition, the limitations of the use of the information as set forth below adequately address any privacy concerns raised by Truss.

### F.  The Request by the Plaintiff Is Not Overly Burdensome

Finally, Truss asserts that the Plaintiffs' Request is overly burdensome. However, Truss has failed to provide sufficient evidence of this claim.  Specifically, although Truss has asserted that it would take over one hundred hours to review and compile the requested information, Truss has offered no reason why the costs associated with such production could not be borne by the Plaintiffs as suggested by Counsel for DISH. *See* (DE # 4 at 3).  Further, while Truss seemingly objects to the possibility of certain responsive documents being reviewed by third parties, Truss has provided no reason why the documents could not be reviewed by the office of Counsel for Truss with the fees associated with that production being paid by the Plaintiffs. *See* (DE # 4 at 94).  Accordingly, Truss has failed to demonstrate that production of the

requested documents is overly burdensome or would cause an undue hardship to Truss.

III.     **CONCLUSION**

Therefore, based upon a review of the record as a whole, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Motion to Compel Roger Truss' Production (DE # 1) is **GRANTED.** Truss & Associates shall produce documents responsive to Request for Production No. 15 as set forth in the Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises issued by Echostar Satellite LLC, et al., to Roger Truss d/b/a Truss & Associates on June 16, 2009 within thirty (30) days from the date of this Order. However, in accordance with the limitations imposed by the District Court in the underlying action, any use by the Plaintiffs of the purchaser information obtained pursuant to the subject subpoena shall be limited to this action and not used to initiate litigation, to threaten potential litigation, or to seek to resolve potential litigation, based upon suspected signal piracy. (S.D. Cal. Case No. 3:07-cv-01273-W-AJB, DE # 93 at 8). It is further

**ORDERED AND ADJUDGED** that the reasonable costs incurred by Truss related to the production of the requested documents shall be borne by the Plaintiffs in this action. In the event that the Parties are unable to reach an agreement as to reasonable costs, either Party may file a Motion with this Court seeking relief related to that issue. Accordingly, the Court shall retain jurisdiction over this matter, to the extent necessary to ensure compliance with this Order including the payment of reasonable costs associated with the review and production of documents responsive to Request for Production No. 15 as set forth in the Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises issued by Echostar Satellite LLC, et al., to

Roger Truss d/b/a Truss & Associates on June 16, 2009 (DE # 4 at 49-56).

**DONE AND ORDERED** in chambers in Miami, Florida on July 16, 2010.

*Andrea M. Simonton*
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

**Copies furnished via CM/ECF to:**
**The Honorable K Michael Moore**
     **United States District Judge**
**All counsel of record**